**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

ALFRED OATES,                    :

       Plaintiff,             :

vs.                        :       CA 17-0130-MU

NANCY A. BERRYHILL,        :
Acting Commissioner of Social Security,
                               :

       Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 23 & 25 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

---

[1]      The parties waived oral argument. (Doc. 24; *see also* Doc. 22.)

[2]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 23 & 25 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

# I. Procedural Background

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on February 18, 2014, alleging disability beginning on April 26, 2013. (*Compare* Tr. 154 *with* Tr. 282-88.) Oates' claim was initially denied on March 19, 2014 (Tr. 210) and, following Plaintiff's June 6, 2014 written request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 220-21), a hearing was conducted before an ALJ on June 24, 2015 (Tr. 170-96).[3] On August 13, 2015, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to disability insurance benefits. (Tr. 154-66.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Oates retains the residual functional capacity to perform those light jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 165 *with* Tr. 193-94). On October 12, 2015, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 149); the Appeals Council denied Oates' request for review on January 24, 2017 (Tr. 1-4). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to right shoulder pain, depression, right arm pain, hypertension, anxiety, right hand pain (including fingers), back pain, morbid obesity, chronic bronchitis/asthma/COPD, and diabetes. The Administrative Law Judge (ALJ) made the following relevant findings:

---

[3]     During the administrative hearing, Plaintiff amended his disability onset date to August 27, 2013. (Doc. 173.)

**3.     The claimant has the following severe impairments: obesity, hypertension, diabetes, depression, degenerative changes of the spine, and degenerative joint disease and impingement of the right shoulder (20 CFR 404.1520(c)). Additionally, the claimant has a non-severe impairment of mild ulnar entrapment of the right elbow.**

.     .     .

**4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525 and 404.1526).**

.     .     .

**5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions and considerations: no pushing or pulling with the right upper extremity, no overhead reaching with the right upper extremity, no lifting over five pounds with the right upper extremity, use of the right (non-dominant) upper extremity to assist; no climbing ladders, ropes, or scaffolds; avoid concentrated exposure to extreme heat and extreme humidity; avoid all exposure to vibration, unprotected heights, and hazardous machinery; and no driving. Additionally, he is limited to unskilled work.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity,

persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

In his Disability Report, the claimant alleged impairments of lower back [pain], crushed elbow, right shoulder [pain], high blood pressure, depression, and nervous condition. He reported being six feet in height and weighing 294 pounds. He reported that he stopped working on April 26, 2013, due to his conditions. He reported completing the tenth grade and denied attending special education classes. He reported taking medications for high blood pressure, pain, obesity, muscle relaxer, depression, and nervous condition prescribed by Dr. FitzGerald.

The claimant completed a Function Report on March 19, 2014, in which he reported living with family. He reported daily activities including preparing his breakfast, walking around the block, watching television, napping, and sitting on the porch. He reported preparing simple meals such as sandwiches. He denied doing any household chores. He reported driving. He reported shopping for cigarettes and household cleaning items. He reported that he is able to pay bills, count change, handle a savings account, and use a checkbook or money orders. He reported no change in his ability to handle money since his conditions began. He reported that his interest is watching television. He reported spending time with others sitting and talking, playing cards, and barbecuing every home game. He reported regularly going to football games. He denied having any problems getting along with others. He reported problems with all physical functioning. He reported that he can pay attention as long as needed, finish what he starts, follow written and spoken instructions very well, but does not handle stress or changes in routine well. He reported using a hand and elbow brace daily, and the elbow brace was prescribed in December 2013.

In a Disability Appeals Report, the claimant reported side effects of drowsiness from his pain medications and frequent urination from another medication. He reported sleeping during the day due to side effects of the medications, and sitting at home most of the time.

The claimant provided the following testimony at the hearing. He has a driver's license and drives occasionally. He is six feet in height and weighs 290 pounds, having intentionally lost 50 pounds by cutting back on bread. He is left handed. His biggest problem is his right arm, which he injured in August 2013. He had a worker's compensation claim that was settled in

October or November 2014. His right arm constantly swells, and his fingers, joints, elbow, and shoulder lock and ache. His pain is a level eight or nine (on a 10 point scale) and goes to level ten with change of weather. He takes multiple pain medications for it. He is also unable to work due to back pain with inability to stand more than 10 to 15 minutes, sit more than 30 to 45 minutes, and walk more than 30 to 40 yards. He returned to his regular job three weeks to a month following his motor vehicle accident; he drove the truck, and the other employee performed the heavy work. He is able to bathe; cook simple items; vacuum a little; and drive about three times a week to the store, to pay bills, and to his sister's house. He can lift five to six pounds with his right arm, and he cannot reach his right arm over his head, behind his back, or to shoulder level. He is diabetic; he does not have insurance; it is hard to get his medications; and he is given samples at the doctor's office. He has high blood pressure with headaches. He has had problems with depression since 2013 and takes antidepressants, which have been helpful. He started drinking a pint every day for about a year; he is no longer drinking. He also has anxiety and trouble sleeping. He uses a brace for his arm, wrist, and back.

In terms of the claimant's alleged **obesity,** in treatment at MedCenter Demopolis on August 29, 2013, the claimant weighed 301 pounds at six feet in height. In examination with Dr. Maurice FitzGerald on October 18, 2013, the claimant's body mass index was 41. Admitting diagnoses at Whitfield Memorial Hospital on September 23, 2014, included morbid obesity. At the hearing, the claimant testified that he weighs 290 pounds. The claimant's records reveal obesity throughout; however, records provided by Dr. FitzGerald dated August 5, 2014, revealed the claimant exhibited a normal gait and station, ability to stand on toes and heels, and a negative straight leg raising. The claimant's records do not reveal his obesity to be incapacitating to him, but it has been given due consideration in his residual functional capacity assessment.

Regarding the claimant's alleged **hypertension**, in treatment at MedCenter Demopolis on August 29, 2013, the claimant's blood pressure was 166/101. Examination by Dr. FitzGerald on June 3, 2014, revealed blood pressure of 151/82. Smoking cessation was discussed. On August 7, 2014, he was seen by Dr. FitzGerald on referral from physical therapy due to increased heart rate. Blood pressure was 116/65. Chest x-ray was normal with no cardiomegaly. Diagnoses included tachycardia, not otherwise specified. He reported that he had been out of medication since February. On August 11, 2014, chronic obstructive pulmonary disease was added to his diagnoses, and he continued to smoke. Chest x-rays on September 2, 2014 and September 23, 2014, at Bryan W. Whitfield Memorial Hospital were negative. He was treated for chest pain with acute exacerbation of bronchitis and remained in the hospital overnight on September 23, 2014. His admitting diagnoses included tobacco abuse and

hypertension. Dr. FitzGerald's records dated November 5, 2014, revealed normal chest x-ray and electrocardiogram, and blood pressure of 172/82. The claimant's hypertension is somewhat controlled despite medication non-compliance issues, and continued smoking with many admonitions for cessation[,] but it has not resulted in any end organ damage[,] and it is not found to be incapacitating to him. However, it has been given due consideration in his residual functional capacity assessment.

Regarding the claimant's alleged **diabetes**, Dr. FitzGerald's records dated June 3, 2014, reveal diagnoses including type II controlled diabetes. Dr. FitzGerald's diagnoses on November 5, 2014, continue to list uncomplicated, controlled, type II diabetes mellitus. The claimant's diabetes has not resulted in any complications or end organ damage, and it is not found to be debilitating to him. It is controlled with medication and diet despite non-compliance issues. However, it has been given due consideration in his residual functional capacity assessment.

Regarding the claimant's alleged **depression**, Dr. FitzGerald's records dated July 9, 2013, show depression was added to his diagnoses. Donald W. Blanton, Ph.D., performed [a] consultative psychological evaluation of the claimant on May 7, 2014. The claimant reported that he is tense and depressed much of the time and smokes and eats too much but cannot afford his medications. He denied any mental health treatment but reported Zoloft has helped some, which is prescribed by Dr. FitzGerald. Mental evaluation revealed the claimant to be alert and fully oriented with depressed mood and flat affect. He reported nervous trouble and depression two to three days a week depending on his pain level. He denied housework or cooking and reported rarely driving. He related that he plays video games, and is able to shop and handle money. He reported having many friends. Dr. Blanton diagnosed depressive disorder due to orthopedic problems and chronic pain. In examination with Dr. FitzGerald on July 18, 2014, the claimant was oriented and in no acute distress, but diagnoses included unspecified anxiety, and he was prescribed Xanax.

In his Function Report, the claimant reported preparing simple meals, watching television, shopping, driving, and spending time with others talking, playing cards, and barbecuing. He reported regularly going to football games, and he denied having problems getting along with others. He reported that he can pay attention as long as needed, finishes what he starts, can follow written and oral instructions very well. At the hearing, he testified that he lives alone, drives occasionally, performs his own personal care, cooks simple items, does a little cleaning, drives to pay bills, and drives to his sister's house.

Although the claimant's records reveal a diagnosis of depression, he denies any Mental Health treatment and has received only conservative treatment of medication from Dr. FitzGerald. The claimant[']s subjective reports of functioning, socialization with friends and family, and ability to concentrate to drive, pay bills, play cards, play video games, and watch television, are not convincing of a debilitating impairment when considered together with his minimal treatment. However, his depression has been given due consideration in his residual functional capacity assessment.

Regarding the claimant's alleged **degenerative changes of the spine**, Maurice J. FitzGerald, M.D., examined the claimant on May 1, 2013, following a motor vehicle accident with complaints of low back and right arm pain. Examination revealed paravertebral muscle spasms and marked tenderness in the shoulder and back. He was diagnosed with strains and sprains from a recent motor vehicle accident with joint pain at multiple sites. He received an injection and pain medications. In return on May 30, 2013, he had no spinal tenderness or spasms, and straight leg raising was negative bilaterally. He was diagnosed with lumbago. He has consistent treatment records with injections provided and prescriptions for pain medications. MedCenter Demopolis records dated August 29, 2013, reveal full range of motion of the back, with no tenderness to palpation, and negative straight leg raising.

Dr. FitzGerald's consistent treatment records continue, and on October 18, 2013, he noted that the claimant would have to see Pain Management for any more narcotics. In examination with Dr. FitzGerald on June 3, 2014, the claimant's diagnosis was lumbago. On July 3, 2014, he complained of back pain, and examination revealed tenderness on palpation and muscle spasm. He was diagnosed with lumbago and backache and received an injection. In return on August 5, 2014, examination revealed lumbosacral spine pain with motion, limited range of motion, no tenderness on palpation, no spasms, and negative straight leg raising. He exhibited a normal gait and station and was able to stand on toes and heels. He received another injection for lumbago. He received another injection for lumbago on September 4, 2014. On October 6, 2014, x-ray revealed arthritic changes with degeneration. He received an injection. He received another injection on November 5, 2014. He had muscle spasms in the lower back. Dr. FitzGerald's records continue on a monthly basis through June 2015, with injections for the claimant's back spasms.

The claimant is given an impairment of degenerative changes of the spine, with x-rays revealing only degenerative changes, no herniations, and no referral for surgical evaluation. His records continue to reveal negative straight leg raising and a normal gait, although he receives injections monthly for a diagnosis of lumbago. He subjectively reports living alone

and performing his own personal care, driving, regularly going to football games, and cooking out and playing cards with friends. The claimant's records of evidence and subjective reports of functioning do not evidence his spinal degenerative changes to be debilitating; however, they have been given due consideration in his residual functional capacity assessment.

Regarding the claimant's alleged **degenerative joint disease and impingement of the right shoulder**, MedCenter Demopolis provided treatment records of the claimant dated August 29, 2013, for complaint of right shoulder pain radiating to his hand and finger after a trailer dropped on his shoulder. Examination revealed swelling of the right hand with decreased range of motion and sensation of the index and middle finger. He was diagnosed with crush injury of the shoulder/arm and referred to an orthopedist.

Richard D. Meyer, M.D., UAB Highlands Clinic, Department of Orthopaedic Surgery, examined the claimant initially on September 9, 2013. Dr. Myer noted x-rays of the right hand revealed some mild arthritic changes with nothing acute. He opined a crush injury or contusion to the hand that would settle down with time. He reported the claimant had full range of motion of the shoulder. He prescribed an anti-inflammatory and therapy. He estimated maximum medical improvement in two to four months, and **the claimant could return to light duty work whenever a one-arm job was available**. The claimant returned on October 10, 2013, with no median or ulnar atrophy and no Tinel's over the median nerve. He was continued in therapy, where the claimant reported his right wrist always ached.

In examination with Dr. FitzGerald on June 19, 2014, the claimant requested shoulder x-rays and reported he could not lift his right shoulder "but so high." Examination revealed tenderness and crepitus on palpation, muscle spasm, and pain with motion. He received an injection, and x-rays were ordered. On July 18, 2014, he complained of right shoulder pain and received an injection.

David M. Ostrowski, M.D., D1 Sports Medicine & Orthopedics, examined the claimant initially on November 25, 2013. Examination revealed full range of motion of his elbow, shoulder, and fingers. He had decreased grip strength and pinch strength on the right. X-rays of the wrist were unremarkable. X-rays of the elbow revealed a little spur, which was old and unrelated and otherwise normal. **X-rays of the shoulder revealed some possible acromioclavicular joint narrowing.** Dr. Ostrowski assessed pain complaints of multiple joints of the right upper extremity, status post crush injury of the hand, and some sensory abnormalities in testing. He ordered magnetic resonance imaging of the right wrist, elbow,

and shoulder, and electromyogram/nerve conduction velocity of the right upper extremity. Computed tomography scan of the right wrist on December 13, 2013, revealed some small ganglion cyst and tendinopathy; magnetic resonance imaging of the elbow revealed increased signal intensity in the ulnar nerve with some local edema; and **magnetic resonance imaging of the shoulder revealed degenerative joint disease of the acromioclavicular joint with impingement changes, and supraspinatus and infraspinatus tendinopathy, and a small articular surface tear in the supraspinatus.** Dr. Gordon J. Kirschberg, Southern Neurology, performed electromyogram/nerve conduction velocity on December 19, 2013, which revealed evidence of mild ulnar entrapment at the right elbow. In return[] to Dr. Ostrowski on December 20, 2013, the claimant complained mostly of his shoulder, a little of the elbow, and not at all of the wrist, which he moved freely. Dr. Ostrowski recommended referral to Dr. Powell for evaluation of his shoulder, treatment of the ulnar nerve conservatively, and an elbow sleeve.

On July 14, 2014, Dr. Ostrowski completed a Work Status Form for the claimant's injury on August 27, 2013. He listed a diagnosis of crush injury of the right hand/wrist. **He reported the claimant could perform sedentary work with lifting and carrying five pounds maximum; pushing and pulling no more than five pounds with the right hand; no climbing of stairs, ladders, or poles; no work at unguarded heights; and no operation of mobile equipment.** He was reported to have a brace for his right hand/elbow. He noted unknown time to return to full duty. Dr. Ostrowski's assessment is accorded some weight. However, the basis for limiting the claimant to sedentary work and not climbing stairs does not appear to be supported by the records, and the claimant was assessed with a light exertional capacity in this decision with no limitation in climbing stairs in view of the evidence.

Functional Capacity Evaluation was performed on August 6, 2014, by Industrial & Physical Therapy. The testing could not be completed due to increase in heart rate. The claimant was reported to have high pain focused behavior with inconsistencies in range of motion, strength, and mobility. He refused to use his right hand for lifting; and, therefore, his lifting ability could not be determined. The physical therapist concluded that due to the self-limiting use of the right hand and inconsistencies in testing, the test did not reflect the claimant's full potential for return to work.

On August 18, 2014, Lee Hardigree, Occupational Therapist, completed an Impairment Rating and Dr. Ostrowski agreed with it. A total impairment of 30 percent was found for the right hand, 12 percent for the wrist, two percent for the elbow, for a total of 39 percent to the right upper extremity[,] compared to a 23 percent impairment to the whole person.

As for the opinion evidence, Dr. Duke also completed a Mental Residual Functional Capacity Assessment on May 16, 2014. She opined the claimant [is] able to understand, remember, and carry out many short and simple directions[ and is] able to attend and concentrate for two-hour periods. Dr. Duke's mental assessments are accorded substantial weight. Her assessments are consistent with the records of evidence and support this decision.

In sum, the above residual functional capacity assessment is supported by the records of evidence and the claimant's subjective complaints that were evidenced in the records. Of particular note is the Functional Capacity Evaluation performed on August 6, 2014, in which the claimant was noted to have self-limited, thereby preventing a true reflection of his abilities to be determined. However, he has been given severe restrictions of use of his non-dominant right hand in the residual functional capacity. All records were taken into consideration in forming the residual functional capacity assessment.

**6.     The claimant has past relevant work as a heavy truck driver, Dictionary of Occupational Titles #904.383-010 (medium, unskilled); logging truck driver, Dictionary of Occupational Titles #904.683-010 (medium, unskilled); and dump truck driver, Dictionary of Occupational Titles #902.683-010 (medium, unskilled). The vocational expert testified that the residual functional capacity precludes the claimant's past relevant work according to the Dictionary of Occupational Titles. Accordingly, the claimant is unable to perform any past relevant work.**

**7.     The claimant was born on October 21, 1969 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).**

**8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).**

**9.     Transferability of job skills is not  an issue . . . .**

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569  and 404.1569(a)).**

.        .        .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: cashier, Dictionary of Occupational Titles #211.462-010 (light, unskilled) with 57,000 jobs in the state[] economy and 3,300,000 in the national economy; store rental clerk, Dictionary of Occupational Titles #295.367-026 (light, unskilled) with 8[,]800 jobs in the state economy and 430,000 in the national economy; and information clerk, Dictionary of Occupational Titles #237.367-018 (light, unskilled) with 11,000 jobs in the state economy and 970,000 in the national economy.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from April 26, 2013, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 156, 157, 159-64 & 165 (internal citations omitted; emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of

the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[4] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light,

---

[4]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

unskilled jobs identified by the vocational expert ("VE") during the course of the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[5] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Oates asserts three reasons why the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ failed to give substantial weight to the medical opinions of his treating physicians, Dr. David Ostrowski and Dr. Richard Meyer (Doc. 17, at 2-8); (2) the ALJ failed to include all of his severe impairments in evaluating his claim (*id.* at 8-10); and (3) the ALJ's RFC assessment is not supported by substantial evidence (*id.* at 10-11).

---

[5]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

Given that Plaintiff argues that the first two errors impacted/affected the ALJ's RFC determination (*see id.* at 3-3 & 9), the undersigned considers all of Plaintiff's assignment of errors under the larger "umbrella" of the ALJ's RFC determination.

The responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also* 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments,

including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . .").

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[6] However, in order to find the ALJ's RFC assessment supported by

---

[6] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. (Continued)

substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the Court finds that the ALJ linked her RFC assessment—that is, a reduced range of light work—to specific evidence in the record bearing upon Oates's ability to perform the physical, mental, sensory and other requirements of work. (*Compare* Tr. 159-164 *with generally* Tr. 200-01, 204-05, 383-84, 388-89, 391, 393-94, 402-05, 409, 412, 414-18, 420-27, 429-60, 462-79, 491-92, 528-29, 543-46, 549-60 & 562-673.) In particular, even though the Plaintiff argues that the ALJ wrongfully to accord substantial weight to the opinions of his treating physicians and, as a

--------------------

However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

consequence, erred in finding he can perform a range of light work (as opposed to sedentary work), this Court finds that the ALJ committed no such errors.

Before addressing the Plaintiff's specific arguments, the undersigned notes that "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In particular, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 591 (11th Cir. May 2, 2006) (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

Dr. David Ostrowski, an orthopedic surgeon who treated Oates for a crush injury of his right hand and wrist beginning in late 2013 (*see* Tr. 530-33), completed a work status form on July 14, 2014 on which he indicated that Plaintiff could perform sedentary work with a lifting/carrying maximum of 5 pounds on the right and further found Plaintiff should not operate mobile equipment, should not work from unguarded

heights, should perform no climbing of stairs, ladders, or poles, and should perform no pushing or pulling of over 5 pounds with the right hand (Tr. 528). In addition, Dr. Ostrowski specifically noted on the form that Oates wore a brace on his right hand and elbow. (*Id.*) The ALJ accorded some weight to Dr. Ostrowski's assessment but specifically determined that "the basis for limiting the claimant to sedentary work and not climbing stairs does not appear to be supported by the records[.]" (Tr. 164.) Plaintiff argues in her brief that the ALJ erred to reversal both in failing to indicate the weight she gave the "restriction Dr. Ostrowski gave concerning repetitive movements[,]" (Doc. 17, at 4-5) and in rejecting the limitation to sedentary work with no climbing of stairs, since substantial evidence in the record supports this limitation (or those limitations) based on Plaintiff's complaints of back pain (*id.* at 5-7).

With respect to Plaintiff's contention that the ALJ erred in failing to indicate the weight she gave the "restriction Dr. Ostrowski gave concerning repetitive movements[,]" the Court finds no error in this regard inasmuch as Dr. Ostrowski simply did not place a checkmark by the "repetitive motion" line on the work status form, as he did with respect to all other limitations he found (*see* Tr. 528); instead, in an additional blank line provided on the form immediately after the "line" for no "repetitive motion," Dr. Ostrowski simply inserted the observation that Oates wore a brace on his right hand and elbow (*id.*). In other words, Dr. Ostrowski gave no restriction regarding repetitive movements and, as a consequence, the ALJ did not err in failing to address a non-existent restriction/limitation.

Plaintiff's primary argument related to Dr. Ostrowski's assessment is that the ALJ erred to reversal in rejecting the physician's noted limitation to sedentary work with no

climbing of stairs, reasoning that substantial evidence in the record supports this limitation (or those limitations) based on Plaintiff's complaints of back pain (Doc. 17, at 5-6), complaints that Dr. Ostrowski was aware of at the time he assigned sedentary work restrictions (*id.* at 7, citing Tr. 530). While there is certainly evidence in the record that Oates informed Dr. Ostrowski that he had back pain (Tr. 530), it is also clear that Dr. Ostrowski specifically informed Oates at that time (that is, on December 20, 2013) that he did "not deal with back problems." (*Id.*) And since the work status form completed by Dr. Ostrowski on July 14, 2014 bears no indication that any consideration was given to Plaintiff's back pain in completion of the form, the form exhibiting a sole diagnosis of crush injury of the right hand/wrist (Tr. 528), this Court finds that the limitations noted by Dr. Ostrowski on the work status form are directed exclusively to Plaintiff's hand/wrist impairment (*see id.*) and have nothing to do with Plaintiff's back pain. In other words, Dr. Ostrowski's notation that Plaintiff was limited to sedentary work was based solely on the fact that Plaintiff could lift no more than 5 pounds with his right hand and, as well, the checkmark beside the limitation on climbing stairs, ladders and poles was because of the crush injury he suffered to his right hand/wrist. (*See id.*) That this is the correct conclusion is clear given that all the back pain evidence Plaintiff cites to in his brief was generated ***after*** Dr. Ostrowski filled out the form on July 14, 2014 (*compare id.* (dated form) *with* Doc. 17, at 5-7 (Plaintiff's citation to medical records, primarily from Dr. Maurice Fitz-Gerald, dated August 5, 2014, September 4, 2014, October 6, 2014, November 5, 2014, December 15, 2014, January 15, 2015, February 13, 2015, March 16, 2015, April 15, 2015, May 15, 2015, and June 15, 2015)). Therefore, the undersigned **OVERRULES** any explicit (or implicit) suggestion by Plaintiff

that Dr. Ostrowski somehow "linked" his noted limitations to sedentary work and no climbing of stairs to Plaintiff's back pain. And since Dr. Ostrowski's records support only a sedentary lifting/carrying limitation with the right hand with no reasoning for why his right hand impairment would prevent the climbing of stairs[7] (Tr. 528-44), and the ALJ incorporated most of Dr. Ostrowski's noted limitations in his RFC determination (*compare* Tr. 528 (noting a maximum lifting limitation on the right of 5 pounds, no pushing or pulling over 5 pounds with the right hand, no climbing ladders of poles, no working from unguarded heights, and no operating of mobile equipment) *with* Tr. 159 ("no pushing or pulling with the right upper extremity, no overhead reaching with the right upper extremity, no lifting over five pounds with the right upper extremity . . .; no climbing ladders, ropes, or scaffolds; . . . avoid all exposure to . . . unprotected heights, and hazardous machinery; and no driving.")), the undersigned perceives no error regarding the ALJ's finding that there was no basis to limit Plaintiff to sedentary work (Tr. 164), particularly given that Dr. Ostrowski gave absolutely no indication on the form he completed that Plaintiff could not perform prolonged standing or walking or that Plaintiff should only be sitting a certain percentage of a work shift (*see* Tr. 528).

---

[7]     This Court finds it logical and consistent that Plaintiff's right hand impairment would prevent him from climbing ladders and poles (*see, e.g.,* Tr. 530-44), as noted by Dr. Ostrowski (Tr. 528) and as accounted for in the ALJ's RFC determination (Tr. 159 (finding that claimant cannot climb ladders, ropes or scaffolds)), but it would not prevent him from climbing stairs (*see id.* at 530-44). Indeed, it appears to this Court that the climbing of stairs simply got "caught up" in the completion of the form when Dr. Ostrowski placed a checkmark by the line of the form reading "No climbing of stairs, ladders, or poles[.]" (Tr. 528.) Again, given that Dr. Ostrowski's medical records do not support a "no climbing stairs" limitation, this Court finds that the ALJ did not err in rejecting this portion of the physician's work status form. *See Gilabert, supra,* 396 Fed.Appx. at 655 (recognizing that a treating physician's opinion can be rejected where it is inconsistent with his own medical records).

To the extent Plaintiff means to argue that Dr. Fitz-Gerald's medical records, standing alone, establish that Plaintiff can, at best, perform sedentary work with no climbing of stairs (*see* Doc. 17, at 5-7), this Court cannot agree. To be sure, the records generated by Dr. Fitz-Gerald, particularly from August of 2014 through June of 2015, reflect that Oates was treated by monthly injection and medication for back pain and spasms. (*See, e.g.,* Tr. 564, 570, 575, 580, 586, 590-91, 596-97, 602, 621 & 640.) However, on no occasion did Dr. Fitz-Gerald ever indicate that Oates was limited to sedentary work (*see generally,* Tr. 562-673)[8] and, indeed, on each occasion when he evaluated Plaintiff he specifically noted that Plaintiff was in no acute distress and presented without neurological problems (*see, e.g.,* Tr. 564-65, 569, 574-75, 579-80, 585-86, 590-91, 596-97, 601-02, 607-08, 621-22, 640-41 & 671-72). Accordingly, this Court cannot find that Dr. Fitz-Gerald's records, standing alone, establish that Plaintiff can only perform sedentary work. More importantly, when Dr. Fitz-Gerald's records are combined with evidence in the record that Oates "guarded with all . . . trunk ROM . . . [and] demonstrated increased trunk flexion . . . when distracted[]" (Tr. 555), evidence of Plaintiff's reported daily activities (*compare* Tr. 330-337 (plaintiff reported he needs no assistance in caring for his hair, shaving, feeding himself, and using the bathroom, but does sit of the edge of the couch to dress; he can prepare simple meals for himself; he can drive and go out alone, including going to the store to shop; he watches television daily; he performs mechanic work and lifts weights on the weekends; he attends football

---

[8]     Dr. Fitz-Gerald was certainly presented with an opportunity to give some sort of disability opinion on September 14, 2014, but did not do so. (*See* Tr. 623 ("He is trying to get on disability because of his back. No one else will treat him because he doesn't have any money, so no one is giving him anything. We will just do the best we can.")).

games on a regular basis; and at every home football game, he barbeques, plays cards and visits with others) *with* Tr. 183-84 (Oates' hearing testimony that he vacuums a little, bathes, makes "small things to eat," and drives three times a week to shop, pay bills, visit his sister, etc.)), and the evidence supplied by Dr. Ostrowski (*see* Tr. 528-44) and Dr. Richard Meyer (Tr. 391 & 394-95),[9] this Court finds that the evidence of record supports the ALJ's RFC determination that Plaintiff can perform a reduced range of light work.

In addition to the foregoing, even assuming the ALJ erred in failing to articulate whether Plaintiff's anxiety and chronic obstructive pulmonary disease ("COPD") were severe impairments or non-severe impairments, "that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process." *Burgin v. Commissioner of Social Security,* 420 Fed.Appx. 901, 903 (11th Cir. Mar. 30, 2011) (citation and footnote omitted)). In particular, as reflected above, the ALJ proceeded to the fourth and fifth steps of the sequential evaluation process after

---

[9] Plaintiff also contends that the ALJ erred in failing to state with particularity the weight afforded to Dr. Meyer's September 9, 2013 opinion that he could return to light duty "[a]nytime a one arm job is available[]" (*see* Tr. 394) and in failing to include in the RFC determination that he was limited to a one-arm job. (*See* Doc. 17, at 8.) The undersigned finds any possible error by the ALJ in this regard to be harmless inasmuch as Dr. Meyer's opinion was, of course, directed to the issue of whether Oates was capable of returning to his past employment (*compare* Tr. 394 *with* Tr. 391 ("If there is any light duty with a one arm job he can be at work; otherwise, he is off.")) and, more importantly, was rendered some ten months before Dr. Ostrowski's July 14, 2014 opinion that Plaintiff can lift/carry a maximum of 5 pounds with his right hand and push and pull up to five pounds with his right hand (Tr. 528), limitations consistent with the ALJ's RFC determination (*compare id. with* Tr. 159). Moreover, to the extent Plaintiff claims that the RFC allowance "for use of the right (non-dominant) upper extremity to assist[]" was error in light of Dr. Meyer's opinion, the undersigned cannot agree given Dr. Ostrowski's subsequent determination that Plaintiff has some use of his upper extremity (Tr. 528), evidence in the record that Oates "self-limited all aspects of functional testing" of his right upper extremity in August of 2014 "by either not using his right hand ***or using the base of his right hand and palmar surface of fingers***[]" (Tr. 560 (emphasis supplied); *see also id.* at 550-59), and evidence that Oates plays cards (Tr. 334) and videogames (Tr. 492).

determining that Oates had severe impairments of obesity, hypertension, diabetes, depression, degenerative changes of the spine, and degenerative joint disease and impingement of the right shoulder (Doc. 156), *compare Burgin,* 420 Fed.Appx. at 903 n.3 ("The ALJ proceeded further in the sequential evaluation process because he determined that Burgin had a severe impairment due to his obstructive pulmonary disease.") *with id.* at 902 ("The finding of **any severe impairment**, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." (emphasis supplied)), and, indeed, limited the claimant to unskilled light work, that would allow for avoidance of concentrated exposure to extreme heat and extreme humidity (Tr. 159), limitations that account for Plaintiff's anxiety, *compare Sanchez v. Commissioner of Social Security,* 507 Fed.Appx. 855, 859 (11th Cir. Feb. 8, 2013) (finding that "even if the ALJ erred by failing to identify BPD as a severe limitation at step two, the ALJ properly considered the symptoms and limitations that would result from BPD at the latter stages of the five-step disability evaluation.") *with Pinion v. Commissioner of Social Security,* 522 Fed.Appx. 580, 582 (11th Cir. Jun. 19, 2013) ("Where an ALJ determines at step two of the sequential evaluation process that the claimant's mental impairments caused limitations in concentration, persistence, or pace, the ALJ must include those limitations in the hypothetical questions posed to the VE. However, the ALJ may instead include in the hypothetical questions **the limitation that the claimant is restricted to unskilled work if the medical evidence shows that the claimant can perform simple, routine tasks or unskilled work despite her**

***limitations in concentration, persistence, or pace.***" (citations omitted; emphasis

supplied)),[10] and COPD, *compare Dobbs v. Commissioner of Social Security,* 2017 WL

4231100, *6 (M.D. Fla. Sept. 24, 2017) ("Here, although the ALJ determined that

---

[10]    There is simply nothing in the record in this case that reflects limitations attributable to Plaintiff's anxiety any greater than the limitations attributable to Plaintiff's depression and the medical evidence of record clearly reflects that Plaintiff can perform simple and routine tasks despite his moderate limitations in concentration, persistence and pace (*see* Tr. 200-201 & 204-05 (reflecting findings by a reviewing psychologist, Dr. Linda Duke, who reviewed Dr. Blanton's consultative examination report—and specifically his diagnosis that Oates has a depressive disorder due to orthopedic problems and pain—and Oates' statements (including that he has nervous trouble and depression about 2 to 3 days a week depending on his pain level—and found that though Plaintiff has a moderate degree of difficulty in maintaining concentration, persistence or pace due to affective disorders, Oates' ability to understand and remember very short and simple instructions is not significantly limited and that, more specifically, Plaintiff has the ability to understand, remember, and carry out many short and simple instructions; that Oates' ability to carry out very short and simple instructions is not significantly limited; that Plaintiff's ability to make simple work-related decisions is not significantly limited; that Plaintiff can attend and concentrate for two-hour periods, etc.); *compare id. with* Tr. 335 (Plaintiff reported that he can pay attention for "as long as needed[,]" finishes what he starts, and follows written and spoken instructions "very well")). Therefore, the limitation to unskilled work, in both the ALJ's RFC determination (Tr. 159) and her hypothetical to the VE (Tr. 194), was sufficient, in light of the medical evidence in this case, to account for all limitations attributable to Plaintiff's mental impairments. *Compare Pinion, supra,* 522 Fed.Appx. at 582 and *Duval v. Commissioner of Social Security,* 628 Fed.Appx. 703, 712 (11th Cir. Dec. 29, 2015) ("An ALJ may account for [] limitations [in concentration, persistence, and pace] by limiting the hypothetical to unskilled work 'when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace.'") *with Chaney-Everett v. Astrue,* 839 F.Supp.2d 1291, 1305 (S.D. Fla. 2012) ("To the extent [] that the ALJ needed to account for Claimant's concentration deficit in his RFC, he did so by limiting Claimant to unskilled work."). As a result, the undersigned **OVERRULES** Plaintiff's suggestion, in his third assignment of error, that the ALJ erred in failing to include "sufficient" mental limitations attributable to Oates' anxiety, depression, chronic pain, and medication side effects (*see* Doc. 17, at 10-11). In addition, the undersigned would simply note that while Plaintiff makes one conclusory reference to medication side effects in his third assignment of error (Doc. 17, at 10 ("In addition to the reasons set forth above, the ALJ failed to include any limitations attributable to Mr. Oates' chronic pain, ***side effects from medication***, anxiety and depression." (emphasis supplied)), Plaintiff gave no testimony about medication side effects during the administrative hearing (*see* Tr. 174-190) and points to no evidence in the record where he complained of such side effects to his doctors, *see Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir. 1990) (finding that when a claimant has not complained of medication side effects, and the record contains no concerns about side effects from treating or examining physicians, there is substantial evidence to support a finding that side effects are not a significant problem); therefore, Plaintiff has not identified any limitations attributable to medication side effects that should have been included in the ALJ's RFC determination but were not.

Plaintiff's respiratory impairments are not severe, the ALJ found that Plaintiff has several severe impairments, proceeded beyond step two and considered Plaintiff's respiratory impairments in her subsequent analysis. Tr. 26-27, 30 (noting '[s]econdary to asthma and despite long-term tobacco abuse history, [Plaintiff] is to avoid concentrated exposure to respiratory irritants such a[s] fumes, odors, smoke, gases, and poor ventilation.'). As a result, the Court finds that the ALJ's error at step two, if any, was harmless.") *with Thompson v. Commissioner of Social Security,* 2014 WL 12625971, *2 (M.D. Fla. May 15, 2014) (ALJ found that Plaintiff "had restrictions in exposure to respiratory irritants and to extreme heat" due to his COPD), *report and recommendation adopted,* 2014 WL 12625973 (M.D. Fla. Jun. 11, 2014).[11] Thus, there exists no harmful error as articulated by Plaintiff in his second assignment of error (*see* Doc. 17, at 8-10).

In light of the foregoing and because substantial evidence of record supports the Commissioner's determination that Oates can perform the physical and mental requirements of a range of light work as identified by the ALJ, and Plaintiff makes no argument that this residual functional capacity would preclude his performance of the light jobs identified by the VE during the administrative hearing (*compare* Doc. 17 *with* Tr. 193-94), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national

---

[11]     Plaintiff's citation to *Marbury v. Sullivan,* 957 F.2d 837 (11th Cir. 1992) for the proposition that "an ALJ may not arbitrarily pick and choose facts from the medical evidence to support his conclusion with[out] articulating specific, well supported reasons for crediting some evidence while discrediting other evidence[,]" (Doc. 17, at 9) is unavailing because "[n]o such quotation is found in *Marbury.*" *Brownlow v. Colvin,* 2016 WL 814953, *6 n.8 (S.D. Ala. Feb. 29, 2016).

economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 30th day of March, 2018.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**